### A08A0025. ARCHER v. THE STATE.
(661 SE2d 230)

JOHNSON, Presiding Judge.

William Douglas Archer was indicted for two counts of forgery in the first degree and one count of identity fraud, arising out of the theft of three checks from his employer. He was tried before a jury, which found him guilty of all three offenses. The trial judge sentenced Archer to serve ten years in confinement, followed by ten years on probation. Archer appeals.

Viewed in the light most favorable to the verdict,[1] the evidence presented at trial shows that Archer rented a house from Jim White and also worked for White's remodeling company, North Georgia Construction. On Friday, August 20, 2004, White and Archer stopped at a Home Depot store in the city of Hiram. White went into the store and Archer stayed alone in the vehicle, where the North Georgia company checkbook was lying on a seat.

About three weeks later, on September 13, 2004, White and his wife were balancing the company checking account when they discovered that a page containing three checks was missing from the checkbook. White immediately called Washington Mutual Bank, where he had the company account, to stop payment on the missing checks. White testified that he subsequently received a telephone call from a man at a Citgo gas station demanding payment for one of the stopped checks. He also reported the missing checks to the Douglas County Sheriff's Department.

The checks were eventually recovered, and all three of them had been made payable to Archer in varying amounts: check 1465 was for $500, check 1466 was for $200 and check 1467 was for $100. White testified that he had not written any of the three checks to Archer and that it was not his signature on any of those checks. He further noted that he only pays his employees on Fridays, whereas the date

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

listed on each of the stolen checks was August 21, 2004, which was a Saturday. White also testified that he is familiar with Archer's signature and he identified the endorsement on the back of each of the stolen checks as Archer's signature. The three endorsed checks all had the same driver's license number written on them, and a sheriff's deputy testified he had verified that it is Archer's license number.

The state also introduced two legitimate North Georgia Construction payroll checks that White had previously made out to Archer, and which contained Archer's endorsement signature, for comparison to the stolen checks. Those two legitimate checks also contained the same driver's license number as that found on the stolen checks. Moreover, the state presented testimony from a Washington Mutual security specialist, as well as photographs taken from a Washington Mutual security camera, which show that on August 21, 2004, Archer went to a Washington Mutual branch and cashed check 1465 for $500.

1. Archer argues that the trial court erred in denying his motion for a directed verdict of acquittal as to Count 2 of the indictment, which charged him with forgery in the first degree based on his cashing of check 1467 at a Citgo gas station, and as to Count 3 of the indictment, which accused him of identity fraud based on his fraudulent possession of the three stolen checks, because there is no evidence that he presented check 1467 to the station.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. We view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

As to Count 3 of the indictment, Archer's argument that there is no evidence he presented the check to the Citgo station is misplaced because presentation of the check is not an element of identity fraud.[3] However, uttering or delivering the check in question is an

---

[2] (Citations omitted.) *King v. State*, 277 Ga. App. 190 (626 SE2d 161) (2006).

[3] See OCGA § 16-9-121 (a) (1) (a person commits identity fraud when he wilfully and fraudulently, without authorization or consent, uses or possesses with intent to fraudulently use, identifying information concerning an individual).

essential element of the crime of forgery in the first degree as alleged in Count 2 of the indictment.

> A person commits the offense of forgery in the first degree when with intent to defraud he knowingly makes, alters, or possesses any writing in a fictitious name or in such manner that the writing as made or altered purports to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority and *utters or delivers* such writing.[4]

Archer is correct in asserting that the state failed to present any competent evidence that he uttered or delivered check 1467 to the Citgo station. While Archer's endorsement appears on the back of that check along with what appear to be bank deposit stamps, the state did not have anyone from Citgo testify that the check had actually been presented at the store, nor did the state have any witness from any bank testify to authenticate that the stamps on the check are indeed deposit stamps made in the regular course of business. Instead, the state relied upon the testimony from White that he had received a telephone call from an unidentified man at Citgo demanding payment on the check. However, White's testimony concerning what an unidentified person said in a telephone conversation is inadmissible hearsay and has no probative value.[5]

Because there is no competent evidence establishing the essential element that Archer uttered or delivered check 1467, the evidence is not sufficient to sustain the guilty verdict as to forgery in the first degree as alleged in Count 2 of the indictment, and Archer's conviction as to that count must therefore be reversed.[6]

2. Archer contends that the trial court erred in allowing the deputy to give improper hearsay testimony that the driver's license number written on the checks matched Archer's driver's license number. The state concedes that it was error to admit the deputy's hearsay testimony without a proper foundation having been laid, but argues that the error was harmless. Because of our holding in Division 1 reversing Archer's conviction as to Count 2 of the indictment, we shall consider this harmless error issue only as to Counts 1 and 3 of the indictment.

> The test for harmful error is whether it is highly probable that the error contributed to the verdict. In

---

[4] (Emphasis supplied.) OCGA § 16-9-1 (a).

[5] See *Brown v. State*, 266 Ga. 723, 725 (3) (470 SE2d 652) (1996); *Price v. State*, 208 Ga. 695 (1) (69 SE2d 253) (1952).

[6] See *Floyd v. State*, 251 Ga. App. 346, 348-349 (1) (553 SE2d 658) (2001).

determining whether hearsay testimony is harmful, this court has found inadmissible hearsay which is received over objection does not require a new trial if it appears that the evidence could not have affected the verdict.[7]

In the instant case, it is not highly probable that the hearsay testimony concerning Archer's driver's license number contributed to the verdict as to Count 1 of the indictment, which charged Archer with forgery in the first degree based on his possession and uttering of check 1465, and as to Count 3 charging him with identity fraud based on his fraudulent possession of the stolen checks. Given the overwhelming evidence of Archer's guilt as to those two counts of the indictment — including all of the stolen checks having been made payable to him by someone other than White, his endorsement signature appearing on all of them and his having been captured on a bank security camera cashing check 1465 — we fail to see how the challenged testimony unduly prejudiced his defense or affected the verdict as to Counts 1 and 3.[8]

*Judgment affirmed in part and reversed in part. Barnes, C. J., and Phipps, J., concur.*

DECIDED APRIL 16, 2008.

*Joseph S. Key*, for appellant.
*David McDade, District Attorney, Paige E. Boorman, Assistant District Attorney*, for appellee.

---

[7] (Citations and punctuation omitted.) *Phillips v. State*, 241 Ga. App. 764, 767 (527 SE2d 604) (2000).

[8] See *Brown v. State*, 260 Ga. App. 77, 82 (5) (b) (579 SE2d 87) (2003).